# EXHIBIT 2

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |

| | |
|---|---|
| In Re: Wire Harness | 2:12-cv-00102 |
| In Re: Instrument Panel Clusters | 2:12-cv-00202 |
| In Re: Fuel Senders | 2:12-cv-00302 |
| In Re: Heater Control Panels | 2:12-cv-00402 |
| In Re: Alternators | 2:13-cv-00702 |
| In Re: Windshield Wiper Systems | 2:13-cv-00902 |
| In Re: Radiators | 2:13-cv-01002 |
| In Re: Starters | 2:13-cv-01102 |
| In Re: Ignition Coils | 2:13-cv-01402 |
| In Re: Motor Generators | 2:13-cv-01502 |
| In Re: HID Ballasts | 2:13-cv-01702 |
| In Re: Inverters | 2:13-cv-01802 |
| In Re: Air Flow Meters | 2:13-cv-02002 |
| In Re: Fan Motors | 2:13-cv-02102 |
| In Re: Fuel Injection Systems | 2:13-cv-02202 |
| In Re: Power Window Motors | 2:13-cv-02302 |
| In Re: Automatic Transmission Fluid Warmers | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | 2:13-cv-02502 |
| In Re: Electronic Throttle Bodies | 2:13-cv-02602 |
| In Re: Air Conditioning Systems | 2:13-cv-02702 |
| In Re: Windshield Washer Systems | 2:13-cv-02802 |
| In Re: Spark Plugs | 2:15-cv-03002 |
| In Re: Ceramic Substrates | 2:16-cv-12194 |

This Document Relates to:
All Dealership Actions

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is made and entered into this 14th day of July,

2016 ("Execution Date") by and between DENSO Corporation, DENSO International America,

Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO

Automotive Deutschland GmbH, ASMO Co., Ltd., ASMO North America, LLC, ASMO

- 1 -

Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. (the "DENSO Defendants") and Automobile Dealership Plaintiffs (as defined below in Paragraph 11), both individually and on behalf of proposed classes of Automobile Dealership indirect purchasers ("Settlement Classes") as defined below in Paragraph 21.

WHEREAS, Automobile Dealership Plaintiffs are prosecuting claims in the above-captioned *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 (E.D. Mich.) (the "MDL Proceeding"), which includes Case No. 2:12-cv-00102 ("Automotive Wire Harness Systems Action"), Case No. 2:12-cv-00202 ("Instrument Panel Clusters Action"), Case No. 2:12-cv-00302 ("Fuel Senders Action"), Case No. 2:12-cv-00402 ("Heater Control Panels Action"), Case No. 2:13-cv-00702 ("Alternators Action"), Case No. 2:13-cv-00902 ("Windshield Wiper Systems Action"), Case No. 2:13-cv-01002 ("Radiators Action"), Case No. 2:13-cv-01102 ("Starters Action"), Case No. 2:13-cv-01402 ("Ignition Coils Action"), Case No. 2:13-cv-01502 ("Motor Generators Action"), Case No. 2:13-cv-01702 ("HID Ballasts Action"), Case No. 2:13-cv-01802 ("Inverters Action"), Case No. 2:13-cv-02002 ("Air Flow Meters Action"),[1] Case No. 2:13-cv-02102 ("Fan Motors Action"), Case No. 2:13-cv-02202 ("Fuel Injection Systems Action"), Case No. 2:13-cv-02302 ("Power Window Motors Action"), Case No. 2:13-cv-02402 ("Automatic Transmission Fluid Warmers and Oil Coolers Action"), Case No. 2:13-cv-02502 ("Valve Timing Control Devices Action"), Case No. 2:13-cv-02602 ("Electronic Throttle Bodies Action"),[2] Case No. 2:13-cv-02702 ("Air Conditioning Systems Action"), Case

---

[1] Because Automobile Dealership Plaintiffs' operative complaint in the Fuel Injection Systems Action defines Fuel Injection Systems to include Air Flow Meters, Automobile Dealership Plaintiffs intend to consolidate the Air Flow Meters and Fuel Injection Systems Actions.  For the sole purpose of implementing this Agreement, and subject to a reservation of all rights, the DENSO Defendants will not oppose such consolidation.

[2] Because Automobile Dealership Plaintiffs' operative complaint in the Fuel Injection Systems Action defines Fuel Injection Systems to include Electronic Throttle Bodies, Automobile Dealership Plaintiffs intend to consolidate the Electronic Throttle Bodies and Fuel Injection Systems Actions.  For the sole purpose of implementing this Agreement, and subject to a reservation of all rights, the DENSO Defendants will not oppose such consolidation.

No. 2:13-cv-02802 ("Windshield Washer Systems Action"), Case No. 2:15-cv-03002 ("Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Action"), and Case No. 2:16-cv-12194 ("Ceramic Substrates Action"), on their own behalf and on behalf of the Settlement Classes against, among others, the DENSO Defendants;

WHEREAS, Automobile Dealership Plaintiffs allege that they were injured as a result of the DENSO Defendants' participation in unlawful conspiracies to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for (1) Automotive Wire Harness Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Automotive Wire Harness Systems Complaint; (2) Instrument Panel Clusters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Instrument Panel Clusters Complaint; (3) Fuel Senders in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Fuel Senders Complaint; (4) Heater Control Panels in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Heater Control Panels Complaint; (5) Alternators in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Alternators Complaint; (6) Windshield Wiper Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Windshield Wiper Systems Complaint; (7) Radiators in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Radiators Complaint; (8) Starters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Starters Complaint;

(9) Ignition Coils in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Ignition Coils Complaint; (10) Motor Generators in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Motor Generators Complaint; (11) HID Ballasts in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the HID Ballasts Complaint; (12) Inverters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Inverters Complaint; (13) Air Flow Meters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Air Flow Meters Complaint[3]; (14) Fan Motors in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Fan Motors Complaint; (15) Fuel Injection Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Fuel Injection Systems Complaint; (16) Power Window Motors in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Power Window Motors Complaint; (17) Automatic Transmission Fluid Warmers and Oil Coolers in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Automatic Transmission Fluid Warmers and Oil Coolers Complaint; (18) Valve Timing Control Devices in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Valve Timing Control Devices Complaint; (19) Electronic Throttle Bodies in violation of Section 1 of the Sherman Act and

---

[3] *See* footnote 1, *supra*.

various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Electronic Throttle Bodies Complaint[4]; (20) Air Conditioning Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Air Conditioning Systems Complaint; (21) Windshield Washer Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Windshield Washer Systems Complaint; (22) Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Complaint; and (23) Ceramic Substrates in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in the Ceramic Substrates Complaint, each and all such Complaints as defined below in Paragraph 5;

WHEREAS, Automobile Dealership Plaintiffs sought leave of the Court to file the Automobile Dealership Plaintiffs' Proposed Consolidated Amended Complaint, as defined below in Paragraph 6, alleging that they were injured as a result of the DENSO Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for certain automotive parts as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws;

WHEREAS, in the Complaints and the Proposed Consolidated Amended Complaint, Automobile Dealership Plaintiffs have sought both a nationwide injunction under the Clayton Act and damages under the laws of certain states;

---

[4] *See* footnote 2, *supra*.

WHEREAS, the DENSO Defendants do not admit Automobile Dealership Plaintiffs' allegations and have asserted and/or would assert defenses to Automobile Dealership Plaintiffs' claims;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below in Paragraph 22) and counsel for the DENSO Defendants, and this Agreement has been reached as a result of those negotiations, including with the assistance of a mediator;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Actions (as defined below in Paragraph 1) and have concluded that resolving the claims asserted in the Actions against the DENSO Defendants, according to the terms set forth below, is in the best interest of Automobile Dealership Plaintiffs and the Settlement Classes because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) and injunctive relief that the DENSO Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, the Actions may continue against Defendants (as defined below in Paragraph 9) that are not Releasees (as defined below in Paragraph 19);

WHEREAS, the DENSO Defendants, despite their belief that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgments contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted by the Automobile Dealership Plaintiffs against the DENSO Defendants with respect to Automotive Parts as defined in Paragraph 4;

WHEREAS, the DENSO Defendants have provided cooperation to Automobile Dealership Plaintiffs pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA") and have agreed to provide Cooperation (as defined below in Paragraph 7) to Automobile Dealership Plaintiffs in the ongoing prosecution of the Actions as set forth in this Agreement, and Automobile Dealership Plaintiffs believe, based on their investigation, that such Cooperation will reduce Automobile Dealership Plaintiffs' substantial burden and expense associated with prosecuting the Actions; and

WHEREAS, Automobile Dealership Plaintiffs recognize the benefits of the DENSO Defendants' Cooperation;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below in Paragraph 19, and except as hereinafter provided, without costs as to Automobile Dealership Plaintiffs, the Settlement Classes, or the DENSO Defendants or other Releasees, subject to the approval of the Court, on the following terms and conditions:

A.      <u>Definitions</u>

1.      "Actions" means the following cases filed in the MDL Proceeding:

      (a)      Case No. 2:12-cv-00102 ("Automotive Wire Harness Systems Action");

      (b)      Case No. 2:12-cv-00202 ("Instrument Panel Clusters Action");

      (c)      Case No. 2:12-cv-00302 ("Fuel Senders Action");

      (d)      Case No. 2:12-cv-00402 ("Heater Control Panels Action");

      (e)      Case No. 2:13-cv-00702 ("Alternators Action");

      (f)      Case No. 2:13-cv-00902 ("Windshield Wiper Systems Action");

      (g)      Case No. 2:13-cv-01002 ("Radiators Action");

(h)     Case No. 2:13-cv-01102 ("Starters Action");

(i)      Case No. 2:13-cv-01402 ("Ignition Coils Action");

(j)      Case No. 2:13-cv-01502 ("Motor Generators Action");

(k)     Case No. 2:13-cv-01702 ("HID Ballasts Action");

(l)      Case No. 2:13-cv-01802 ("Inverters Action");

(m)    Case No. 2:13-cv-02002 ("Air Flow Meters Action");

(n)     Case No. 2:13-cv-02102 ("Fan Motors Action");

(o)     Case No. 2:13-cv-02202 ("Fuel Injection Systems Action");

(p)     Case No. 2:13-cv-02302 ("Power Window Motors Action");

(q)     Case No. 2:13-cv-02402 ("Automatic Transmission Fluid Warmers and Oil Coolers Action");

(r)     Case No. 2:13-cv-02502 ("Valve Timing Control Devices Action");

(s)     Case No. 2:13-cv-02602 ("Electronic Throttle Bodies Action");

(t)     Case No. 2:13-cv-02702 ("Air Conditioning Systems Action");

(u)     Case No. 2:13-cv-02802 ("Windshield Washer Systems Action");

(v)     Case No. 2:15-cv-03002 ("Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Action");

(w)    Case No. 2:16-cv-12194 ("Ceramic Substrates Action");

(x)     Any other action or proceeding filed or otherwise pursued by or on behalf of any Automobile Dealership Plaintiff or any other Settlement Class Member in which any claim is asserted against any of the DENSO Defendants with respect to any Released Part (as defined below in Paragraph 18); and

(y)     Any action or proceeding initiated by the filing of the Proposed Consolidated Amended Complaint, or any complaint materially the same thereto.

2.     "Alleged Parts" means each of the following automotive parts, as well as their respective components, and modules and assemblies for which the parts are a component:

(a)     "Automotive Wire Harness Systems," as defined in Paragraph 3 of the Third Consolidated Class Action Complaint, Case No. 2:12-cv-00102 (Oct. 17, 2014), ECF No. 218;

(b)     "Instrument Panel Clusters," as defined in Paragraph 3 of the Second Consolidated Class Complaint, Case No. 2:12-cv-00202 (Aug. 28, 2014), ECF No. 89;

(c)     "Fuel Senders," as defined in Paragraph 3 of the Second Consolidated Class Complaint, Case No. 2:12-cv-00302 (Aug. 27, 2014), ECF No. 111;

(d)     "Heater Control Panels," as defined in Paragraph 1 of the Second Consolidated Class Action Complaint, Case No. 2:12-cv-00402 (Aug. 25, 2014), ECF No. 139;

(e)     "Alternators," as defined in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-00702 (Sept. 25, 2015), ECF No. 52;

(f)     "Windshield Wiper Systems," as defined in Paragraph 2 of the Corrected Consolidated Class Action Complaint, Case No. 2:13-cv-00902 (Feb. 10, 2015), ECF No. 48;

(g)     "Radiators," as defined in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01002 (June 20, 2014), ECF No. 31;

(h)     "Starters," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01102 (Sept. 26, 2015), ECF No. 50;

(i)     "Ignition Coils," as defined in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01402 (Sept. 26, 2015), ECF No. 54;

(j)     "Motor Generators," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01502 (June 20, 2014), ECF No. 2;

(k)     "HID Ballasts," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01702 (June 21, 2014), ECF No. 24;

(l)     "Inverters," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01802 (Feb. 26, 2015), ECF No. 14;

(m)     "Air Flow Meters," as defined in Paragraph 3 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:14-cv-10588 (Feb. 7, 2014), ECF No. 1;

(n)     "Fan Motors," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02102 (June 21, 2014), ECF No. 21;

(o)     "Fuel Injection Systems," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02202 (Jan. 16, 2015), ECF No. 32, including Air Flow Meters, as defined above, and Electronic Throttle Bodies, as defined below, whether sold separately or as a part of a system;

(p)     "Power Window Motors," as defined in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02302 (June 21, 2014), ECF No. 22;

(q)     "Automatic Transmission Fluid Warmers" and "Oil Coolers," as defined in Paragraphs 3 and 4 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02402 (Sept. 30, 2015), ECF No. 19;

(r)     "Valve Timing Control Devices," as defined in Paragraph 3 of the Consolidated Amended Class Complaint, Case No. 2:13-cv-02502 (Jan. 16, 2015), ECF No. 32;

(s)     "Electronic Throttle Bodies," as defined in Paragraph 3 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:14-cv-10594 (Feb. 7, 2014), ECF No. 1;

(t)　　"Air Conditioning Systems," as defined in Paragraph 3 of the Consolidated Amended Class Complaint, Case No. 2:13-cv-02702 (Sept. 26, 2015), ECF No. 27;

(u)　　"Windshield Washer Systems," as defined in Paragraph 3 of the Consolidated Amended Class Complaint, Case No. 2:13-cv-02802 (June 21, 2014), ECF No. 29;

(v)　　"Spark Plugs," "Oxygen Sensors," and "Air Fuel Ratio Sensors," as defined in Paragraphs 2–4 of the Class Action Complaint, Case No. 2:15-cv-13465 (Oct. 1, 2015), ECF No. 2; and

(w)　　"Ceramic Substrates," as defined in Paragraph 2 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:16-cv-12194 (June 14, 2016), ECF No. 2.

3.　　"Automobile Dealership" means any person or entity who has purchased new Vehicles (as defined below in Paragraph 25) for resale or lease.

4.　　"Automotive Parts" means any part or part assembly as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, but without regard to whether or not it was sold directly to an OEM, and includes the Alleged Parts.

5.　　"Complaints" means each of the following documents:

(a)　　the Third Consolidated Class Action Complaint, Case No. 2:12-cv-00102 (Oct. 17, 2014), ECF No. 218 ("Automotive Wire Harness Systems Complaint");

(b)　　the Second Consolidated Class Complaint, Case No. 2:12-cv-00202 (Aug. 28, 2014), ECF No. 89 ("Instrument Panel Clusters Complaint");

(c)　　the Second Consolidated Class Complaint, Case No. 2:12-cv-00302 (Aug. 27, 2014), ECF No. 111 ("Fuel Senders Complaint");

(d) the Second Consolidated Class Action Complaint, Case No. 2:12-cv-00402 (Aug. 25, 2014), ECF No. 139 ("Heater Control Panels Complaint");

(e) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-00702 (Sept. 25, 2015), ECF No. 52 ("Alternators Complaint");

(f) the Corrected Consolidated Class Action Complaint, Case No. 2:13-cv-00902 (Feb. 10, 2015), ECF No. 48 ("Windshield Wiper Systems Complaint");

(g) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01002 (June 20, 2014), ECF No. 31 ("Radiators Complaint");

(h) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01102 (Sept. 25, 2015), ECF No. 50 ("Starters Complaint");

(i) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01402 (Sept. 26, 2015), ECF No. 54 ("Ignition Coils Complaint");

(j) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01502 (June 20, 2014), ECF No. 2 ("Motor Generators Complaint");

(k) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01702 (June 21, 2014), ECF No. 24 ("HID Ballasts Complaint");

(l) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01802 (Feb. 26, 2015), ECF No. 14 ("Inverters Complaint");

(m) the Class Action Complaint, Case No. 2:14-cv-10588 (Feb. 7, 2014), ECF No. 1 ("Air Flow Meters Complaint");

(n) the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02102 (June 21, 2014), ECF No. 21 ("Fan Motors Complaint");

(o)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02202 (Jan. 16, 2015), ECF No. 32 ("Fuel Injection Systems Complaint");

(p)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02302 (June 21, 2014), ECF No. 22 ("Power Window Motors Complaint");

(q)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02402 (Sept. 30, 2015), ECF No. 19 ("Automatic Transmission Fluid Warmers and Oil Coolers Complaint");

(r)     the Consolidated Amended Class Complaint, Case No. 2:13-cv-02502 (Jan. 16, 2015), ECF No. 32 ("Valve Timing Control Devices Complaint");

(s)     the Class Action Complaint, Case No. 2:14-cv-10594 (Feb. 7, 2014), ECF No. 1 ("Electronic Throttle Bodies Complaint");

(t)     the Consolidated Amended Class Complaint, Case No. 2:13-cv-02702 (Sept. 26, 2015), ECF No. 27 ("Air Conditioning Systems Complaint");

(u)     the Consolidated Amended Class Complaint, Case No. 2:13-cv-02802 (June 21, 2014), ECF No. 29 ("Windshield Washer Systems Complaint");

(v)     the Class Action Complaint, Case No. 2:15-cv-13465 (Sept. 30, 2015), ECF No. 2 ("Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Complaint");

(w)     the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:16-cv-12194 (June 14, 2016), ECF No. 2 ("Ceramic Substrates Complaint"); and

(x)     Any other action or proceeding filed or otherwise pursued by or on behalf of any Automobile Dealership Plaintiff or any other Settlement Class Member in which any claim is asserted against any of the DENSO Defendants with respect to any Released Part.

6.     "Proposed Consolidated Amended Complaint" means the Consolidated Amended Complaint, filed in Case No. 2:12-cv-00202 (Jan. 7, 2016), ECF No. 142-1, among other Actions.

7.     "Cooperation" shall refer to those provisions set forth below in Paragraphs 44–57.

8.     "Cooperation Materials" means any information, testimony, Documents (as defined below in Paragraph 10) or other material (including information from attorney proffers) provided by any of the DENSO Defendants or their counsel under the terms of this Agreement.

9.     "Defendant" means any party named as a defendant in any of the Actions at any time up to and including the date of Final Court Approval, as defined below in Paragraph 31.

10.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including electronically stored information.  A draft or non-identical copy of a document is a separate document within the meaning of this term.

11.     "Automobile Dealership Plaintiffs" means those Settlement Class Members, as defined in Paragraph 23, who were named plaintiffs in any of the Actions as of May 16, 2016 or who have been or are subsequently added as named plaintiffs in any of the Actions prior to the entry of final judgment against the DENSO Defendants in the Actions.

12.     "End-Payor Actions" means the following cases filed in the MDL Proceeding:

(a)     Case No. 2:12-cv-00103 (re: Automotive Wire Harness Systems);

(b)     Case No. 2:12-cv-00203 (re: Instrument Panel Clusters);

(c)     Case No. 2:12-cv-00303 (re: Fuel Senders);

(d)     Case No. 2:12-cv-00403 (re: Heater Control Panels);

(e)     Case No. 2:13-cv-00703 (re: Alternators);

(f)     Case No. 2:13-cv-00903 (re: Windshield Wiper Systems);

(g)     Case No. 2:13-cv-01003 (re: Radiators);

(h)     Case No. 2:13-cv-01103 (re: Starters);

(i)     Case No. 2:13-cv-01403 (re: Ignition Coils);

(j)     Case No. 2:13-cv-01503 (re: Motor Generators);

(k)     Case No. 2:13-cv-01703 (re: HID Ballasts);

(l)     Case No. 2:13-cv-01803 (re: Inverters);

(m)     Case No. 2:13-cv-02003 (re: Air Flow Meters);

(n)     Case No. 2:13-cv-02103 (re: Fan Motors);

(o)     Case No. 2:13-cv-02203 (re: Fuel Injection Systems);

(p)     Case No. 2:13-cv-02303 (re: Power Window Motors);

(q)     Case No. 2:13-cv-02403 (re: Automatic Transmission Fluid Warmers and

Oil Coolers);

(r)     Case No. 2:13-cv-02503 (re: Valve Timing Control Devices);

(s)     Case No. 2:13-cv-02603 (re: Electronic Throttle Bodies);

(t)     Case No. 2:13-cv-02703 (re: Air Conditioning Systems);

(u)     Case No. 2:13-cv-02803 (re: Windshield Washer Systems);

(v)     Case No. 2:15-cv-03003 (re: Spark Plugs, Oxygen Sensors, and Air Fuel

Ratio Sensors);

(w)     Case No. 2:16-cv-11804 (re: Ceramic Substrates);

(x)     Any other action or proceeding filed or otherwise pursued by or on behalf of

any End-Payor Plaintiff, as defined below in Paragraph 13, in which any claim is asserted against

any of the DENSO Defendants with respect to any Released Part; and

(y)     Any action or proceeding initiated by the filing of the Proposed Consolidated Amended Complaint, or any complaint materially the same thereto.

13.     "End-Payor Plaintiffs" means any persons or entities who were named plaintiffs in any of the End-Payor Actions as of May 16, 2016, or the Proposed Consolidated Amended Complaint, as defined in Paragraph 5 of the End-Payor Settlement Agreement, or who have been or are subsequently named as plaintiffs in any End-Payor Action(s) prior to the entry of final judgment against the DENSO Defendants in the End-Payor Actions.

14.     "End-Payor Settlement Agreement" means the agreement entered into by the DENSO Defendants and End-Payor Plaintiffs, executed on July 14, 2016.

15.     "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

16.     "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class(es).

17.     "Protective Orders" means the Stipulation and Protective Order Governing the Production and Exchange of Confidential Information, No. 12-md-2311 (E.D. Mich. July 10, 2012) (ECF No. 200), and any other similar order issued in any Action.

18.     "Released Parts" shall refer to all Automotive Parts, as defined above in Paragraph 4.

19.     "Releasees" shall refer to the DENSO Defendants, and to each of their past and present parents, subsidiaries, affiliates, partners, insurers, and all other persons, partnerships or

corporations with whom any of the foregoing have been, or are now, affiliated, and each of their respective past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, and insurers, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, excluding any Defendants as of the Execution Date or alleged corporate-entity co-conspirators (other than the DENSO Defendants and their past and present parents, subsidiaries, or affiliates) named in any action brought in the MDL Proceeding.

20.     "Releasors" shall refer to the Settlement Class Members, as defined in Paragraph 23, below, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, other than Releasors who opt-out pursuant to Paragraph 38 of this Agreement.

21.     For purposes of this Agreement, the "Settlement Classes" are defined to include each of the following classes:

(a)     "Automotive Wire Harness Systems Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Automotive Wire Harness Systems as a component part, or indirectly purchased one or more Automotive Wire Harness Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(b)     "Instrument Panel Clusters Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Instrument Panel Clusters as a component part, or indirectly purchased one or more Instrument Panel Clusters as a replacement part, which were manufactured or sold

by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

  (c)  "Fuel Senders Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Fuel Senders as a component part, or indirectly purchased one or more Fuel Senders as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

  (d)  "Heater Control Panels Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Heater Control Panels as a component part, or indirectly purchased one or more Heater Control Panels as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

  (e)  "Alternators Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Alternators as a component part, or indirectly purchased one or more Alternators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.[5]

  (f)  "Windshield Wiper Systems Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Windshield Wiper Systems as a component part, or indirectly purchased one or more Windshield Wiper Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

  (g)  "Radiators Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Radiators as a component part, or indirectly purchased one or more Radiators as a

---

[5] Automobile Dealership Plaintiffs' operative complaints in the Alternators and Starters Actions are identical to one another.  Automobile Dealership Plaintiffs are considering amending these complaints so as to, among other things, limit one to Alternators and the other to Starters.  For the sole purpose of implementing this Agreement, and subject to a reservation of all rights, the DENSO Defendants will not oppose such amendments.

replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(h)    "Starters Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Starters as a component part, or indirectly purchased one or more Starters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.[6]

(i)    "Ignition Coils Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Ignition Coils as a component part, or indirectly purchased one or more Ignition Coils as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(j)    "Motor Generators Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Motor Generators as a component part, or indirectly purchased one or more Motor Generators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(k)    "HID Ballasts Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more HID Ballasts as a component part, or indirectly purchased one or more HID Ballasts as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(l)    "Inverters Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Inverters as a component part, or indirectly purchased one or more Inverters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

---

[6] *See* footnote 5, *supra*.

(m)     "Fan Motors Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Fan Motors as a component part, or indirectly purchased one or more Fan Motors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.[7]

(n)     "Fuel Injection Systems Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Fuel Injection Systems as a component part, or indirectly purchased one or more Fuel Injection Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.[8]

(o)     "Power Window Motors Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Power Window Motors as a component part, or indirectly purchased one or more Power Window Motors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(p)     "Automatic Transmission Fluid Warmers and Oil Coolers Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Automatic Transmission Fluid Warmers or Oil Coolers as a component part, or indirectly purchased one or more Automatic Transmission Fluid Warmers or Oil Coolers as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

---

[7] Automobile Dealership Plaintiffs intend to amend the Fan Motors Complaint to name one or more of the DENSO Defendants as a defendant in the Fan Motors Action.  For the sole purpose of implementing this Agreement, and subject to a reservation of all rights, the DENSO Defendants will not oppose that amendment.

[8] Because the Fuel Injection Systems Settlement Class includes Automobile Dealerships that purchased Air Flow Meters and Electronic Throttle Bodies, this Agreement does not provide for separate settlement classes for Automobile Dealerships that purchased those products.

(q)      "Valve Timing Control Devices Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Valve Timing Control Devices as a component part, or indirectly purchased one or more Valve Timing Control Devices as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(r)      "Air Conditioning Systems Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Air Conditioning Systems as a component part, or indirectly purchased one or more Air Conditioning Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(s)      "Windshield Washer Systems Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Windshield Washer Systems as a component part, or indirectly purchased one or more Windshield Washer Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(t)      "Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Spark Plugs, Oxygen Sensors, or Air Fuel Ratio Sensors as a component part, or indirectly purchased one or more Spark Plugs, Oxygen Sensors, or Air Fuel Ratio Sensors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(u)      "Ceramic Substrates Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 1998, through the Execution Date, purchased a new Vehicle in the United States that included one or more Ceramic Substrates as a component part, or indirectly purchased one or more Ceramic Substrates as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

22.     "Settlement Class Counsel" shall refer to the law firms of:

Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095

Cuneo Gilbert & LaDuca, LLP
507 C Street, N .E.
Washington, DC 20002

Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

23.     "Settlement Class Member" means each member of any of the Settlement Classes who has not timely elected to be excluded from the Settlement Classes.

24.     "Settlement Amount" shall be USD $61,200,000 and the Settlement Amount plus any income or interest earned upon this sum after it is deposited into the Escrow Account(s) (as defined below in Paragraph 35) shall constitute the "Settlement Funds."

25.     "Vehicle" means any automobile, car, light truck, pickup truck, crossover, van, mini-van, sport utility vehicle, or similar motor vehicle.

B.     Approval of this Agreement and Dismissal of Claims Against the DENSO Defendants

26.     On the Execution Date of this Agreement, Automobile Dealership Plaintiffs and the DENSO Defendants shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 58–60 of this Agreement.

27.     Automobile Dealership Plaintiffs and the DENSO Defendants shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Actions as to the Releasees.

28.     After reasonable notice to and review and comment by the DENSO Defendants, Automobile Dealership Plaintiffs shall in each then pending Action submit to the Court a motion seeking preliminary approval ("Preliminary Approval") of this Agreement ("Preliminary Approval Motions").  The Preliminary Approval Motions shall include the proposed form of an order preliminarily approving this Agreement.  The text of the proposed form of an order preliminarily approving this Agreement shall be subject to good faith efforts to agree by Automobile Dealership Plaintiffs and the DENSO Defendants before submission of the Preliminary Approval Motions. Automobile Dealership Plaintiffs and the DENSO Defendants agree to use their best efforts to obtain Preliminary Approval from the Court by August 10, 2016. The terms of the proposed order preliminarily approving this Agreement will include the substance of the following provisions:

(a)     preliminarily approving this Agreement as being fair, reasonable, and adequate to the Settlement Classes;

(b)     preliminarily certifying the Settlement Classes as meeting the standards for settlement classes under Federal Rule of Civil Procedure 23;

(c)     appointing the law firms identified in Paragraph 22 of this Agreement as Settlement Class Counsel;

(d)     appointing the Automobile Dealership Plaintiffs as class representatives of the Settlement Classes;

(e)     directing that notice be given to the Settlement Class Members at a time and in a manner consistent with the terms of this Agreement;

(f)     approving the establishment of the Escrow Account(s) (as defined below in Paragraph 35);

(g)     providing that the Court's Preliminary Approval of this Agreement and preliminary certification of the Settlement Classes will have no effect on the rights of any Defendant, including the DENSO Defendants, to contest the certification of any other proposed classes in the MDL Proceeding; and

(h)     staying the Actions against the DENSO Defendants for all purposes except those necessary to effectuate this Agreement.

29.     Automobile Dealership Plaintiffs, at a time to be decided in their sole discretion, shall in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and of this Agreement to all members of the Settlement Classes identified by Automobile Dealership Plaintiffs ("Notice Motions").  The Notice Motions shall provide for notice to all members of the Settlement Classes in a method designed to meet the requirements of Rule 23 and the due process clause.  The Automobile Dealership Plaintiffs will submit a draft of the Notice Motions to the DENSO Defendants sufficiently in advance of the date the Automobile Dealership Plaintiffs intend to submit the Notice Motions to the Court for the DENSO Defendants to review and comment upon the Notice Motions.  To mitigate the costs of notice, Automobile Dealership Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Classes of this settlement and any other settlements that have been or are reached by the time of the Notice Motions.  The Notice Motions shall include a proposed form of, method for, and date of dissemination of notice in each Action.

30.     Automobile Dealership Plaintiffs shall seek at the earliest practicable time, and the DENSO Defendants will not object unreasonably to, the entry of an order and final judgment in each Action, the text of which Automobile Dealership Plaintiffs and the DENSO Defendants shall

agree upon. The terms of such orders and final judgments will include the substance of the following provisions:

      (a)    certifying each of the Settlement Classes described in Paragraph 21, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement and as a settlement class for the relevant Action;

      (b)    approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

      (c)    as to the DENSO Defendants and any other Releasees named in any Action, directing that the Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

      (d)    reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, as well as over the DENSO Defendants, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

      (e)    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgments of dismissal in each Action pursuant to subpart (c) of this Paragraph shall be final;

      (f)    providing that (i) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any Defendant, including the DENSO Defendants, to contest certification of any class proposed in the MDL Proceeding, except the DENSO Defendants may not contest the Automobile Dealership Plaintiffs' motions for class certification in the Actions unless the settlement is vacated or terminated, (ii) the Court's findings in this Order

shall have no effect on the Court's ruling on any motion to certify any class in the MDL Proceeding, and (iii) no party may cite or refer to the Court's approval of the Settlement Classes as persuasive or binding authority with respect to any contested motion to certify any such class;

(g)     enjoining the DENSO Defendants, for a period of two years beginning on the date of entry of the final order and judgment, from engaging in any price-fixing, bid-rigging, or market allocation as to any Automotive Part in violation of Section 1 of the Sherman Act; and

(h)     enjoining any Settlement Class Member, and their counsel, from prosecuting any claim against the DENSO Defendants or the Releasees that is released by this Agreement.

31.     This Agreement shall become final and be deemed to have received "Final Court Approval" within the meaning of this Agreement when (i) the Court has entered in each Action the orders and final judgments provided for in Paragraph 30, (ii) the Court has entered in each of the End-Payor Actions the orders and final judgments provided for in Paragraph 29 of the End-Payor Settlement Agreement, and (iii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and final judgment as to the DENSO Defendants described in subpart (i) hereof has expired in each Action and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the order granting final approval or the entry of judgment in any Action or to toll the time for appeal of the order granting final approval or the judgment in any Action or, if appealed, approval of this Agreement and the final judgment in each Action as to the DENSO Defendants has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the

provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

32.     Neither this Agreement (whether or not it should become final) nor the final judgment in each of the Actions, nor any and all negotiations, documents, and discussions associated with them, shall be deemed or construed to be an admission by the DENSO Defendants or the Releasees, or evidence, of any violation of any statute or law or of any liability or wrongdoing whatsoever by the DENSO Defendants or the Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, in any other action or proceeding against the DENSO Defendants and any other Releasees.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by the DENSO Defendants, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.  Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 44–57 for the prosecution of the claims in the MDL Proceeding, except as to any such claims against the DENSO Defendants or Releasees.

C.     <u>Release, Discharge, and Covenant Not to Sue</u>

33.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 31 of this Agreement, and in consideration of payment of the Settlement Amount as specified in Paragraph 35 of this Agreement, the injunction to be entered as described in Paragraph 30(g) of this Agreement, the Cooperation provided pursuant to Paragraphs 44–57, and for other valuable consideration, the

Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to this Agreement or makes a claim upon or receives a payment from the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way related to, the conduct alleged in the Complaints or the Proposed Consolidated Amended Complaint or any act or omission of the Releasees (or any of them) concerning any or all Released Parts, including any conduct alleged and causes of action asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Actions concerning Released Parts, provided, however, that nothing herein shall release:  (1) any claims based on direct purchases of Released Parts; (2) any claims made in the MDL Proceeding with respect to an indirect purchase of a Released Part not for resale or lease; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, warranty, securities, or similar claim relating to Released Parts; (5) claims concerning any product other than Released Parts; (6) claims under laws other than those of the United States relating to purchases made by Releasors outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State relating to purchases made by Releasors outside of an Indirect Purchaser State ("Released Claims").  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in

part, upon any of the Released Claims or conduct at issue in the Released Claims unless this Agreement is, for any reason, not finally approved or terminated.

34.     In addition to the provisions of Paragraph 33 of this Agreement, Releasors hereby expressly waive and release, with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR[;]

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 33 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the DENSO Defendants and Automobile Dealership Plaintiffs have agreed to release pursuant to Paragraph 33, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.     <u>Settlement Amount</u>

35.     Subject to the provisions hereof, the DENSO Defendants shall pay or cause to be paid the Settlement Amount.  The Settlement Amount shall be paid in United States Dollars into one or more segregated escrow accounts to be administered in accordance with the provisions of Paragraph 37 of this Agreement (the "Escrow Account(s)") within thirty (30) days following the

later of (i) the date the court grants Preliminary Approval or (ii) the DENSO Defendants being provided with the account number, account name, and wiring information for the Escrow Accounts.  No part of the Settlement Amount paid by the DENSO Defendants shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures or punitive recoveries.

36.     The allocation of the Settlement Amount to each Settlement Class as defined in Paragraph 21 above shall be determined by Settlement Class Counsel and subject to approval by the Court after notice to the Settlement Classes as directed by the Court.

E.     Qualified Settlement Fund

37.     (a)     The Escrow Account(s) will be established at Huntington National Bank with such Bank serving as escrow agent ("Escrow Agent") subject to one or more escrow agreements mutually acceptable to Settlement Class Counsel and the DENSO Defendants, such escrow to be subject to the Court's continuing supervision and control.  In addition, Settlement Class Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 37.  Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

(b)     Automobile Dealership Plaintiffs and the DENSO Defendants agree to treat each Escrow Account as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  All provisions of this Agreement shall be interpreted in a manner that is consistent with each Escrow Account being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.

(c)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator for the Escrow Accounts shall be Settlement Class Counsel.  Settlement Class Counsel shall cause the timely and proper

filing of all informational and other tax returns necessary or advisable with respect to each Escrow Account (including the returns described in Treasury Regulation § 1.468B-2(k) and (l)). Settlement Class Counsel shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)) back to the earliest permitted date, if available. Such returns (as well as the relation-back election described in this Paragraph 37(c)) shall be consistent with each Escrow Account's status as a Qualified Settlement Fund and in all events shall reflect that all Taxes, as defined below in Paragraph 37(e) (including any estimated taxes, interest, or penalties), on the Settlement Funds shall be paid out of the Settlement Funds as provided in Paragraph 37(f) hereof. It shall be the responsibility of Settlement Class Counsel to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(d)     The Escrow Agent shall cause the Settlement Funds to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. The DENSO Defendants shall bear no risk related to the Settlement Funds. The Settlement Funds shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Funds shall be distributed pursuant to this Agreement or further order(s) of the Court.

(e)     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the Settlement Funds, including any taxes or tax detriments that may be imposed

upon the DENSO Defendants or any other Releasee with respect to the Settlement Funds for any period during which any Escrow Account does not qualify as a Qualified Settlement Fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this Paragraph 37 (including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 37 ("Tax Expenses")), shall be paid out of the Settlement Funds.

(f)     Neither the DENSO Defendants nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority. The Escrow Agent and Settlement Class Counsel shall indemnify and hold the DENSO Defendants and the Releasees harmless for Taxes and Tax Expenses (including taxes payable by reason of such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Escrow Account(s) and shall be timely paid by the Settlement Class Counsel out of the Settlement Funds without prior order from the Court and Settlement Class Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)).  Neither the DENSO Defendants nor any Releasee shall be responsible or have any liability therefor or for any reporting requirements that may relate thereto.  The DENSO Defendants and Settlement Class Counsel agree to cooperate with each other and their tax

attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph 37.

(g)     If this Agreement does not receive Final Court Approval, then the Settlement Funds (net of costs incurred and expended in accordance with Paragraph 39), shall be returned to the DENSO Defendants within thirty (30) calendar days of the Court's final determination.

F.     <u>Exclusions</u>

38.     Subject to Court approval, any person or entity seeking exclusion from the Settlement Class(es) must file a written request for exclusion by the Opt-Out Deadline.  Any person or entity that files such a request shall be excluded from the Settlement Class(es) and shall have no rights with respect to this settlement.  Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Agreement upon Final Court Approval.  Settlement Class Counsel shall, within ten (10) business days of the Opt-Out Deadline, provide the DENSO Defendants with a list and copies of all opt-out requests it receives in each of the Actions and shall file under seal with the Court a list of all members of the Settlement Classes who timely and validly opted out of the settlement.

(a)     Subject to Court approval, any member of the Settlement Class(es) who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.  The DENSO Defendants reserve all of their legal rights and defenses, including any defenses relating to whether any excluded member of the Settlement Classes is an indirect purchaser of Released Parts.

(b)     Subject to Court approval, in the written request for exclusion, the member of the Settlement Class(es) must state his, her, or its full name, address, and telephone number. Further, the member of the Settlement Classes must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement. Any member of the Settlement Classes that submits a written request for exclusion may also identify the number of new Vehicles purchased from January 1, 1998 through the Execution Date of this Agreement as requested in the notice to the Settlement Class(es) as provided in Paragraph 29.

(c)     The DENSO Defendants or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

(d)     Within twenty (20) business days following the Opt-Out Deadline in accordance with the terms of this Paragraph 38, or as soon thereafter as practicable, the parties shall determine the total number of automobile dealer locations in the Indirect Purchaser States from January 1, 1998 through the Execution Date that purchased Vehicles containing Released Parts or purchased Released Parts (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below). The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information, and each dealership location shall be counted as a separate Settlement Class Member for the purposes of this calculation. In the event the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropriate source of the necessary information and any costs or expenses associated with securing such information shall be paid pursuant to Paragraph 39 below. Within

ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Classes ("Total Opt-Out Percentage"), provided that the DENSO Defendants shall have the sole option to waive the calculation and, by doing so, waive their rights under this Paragraph.  The Total Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Classes, and the denominator of which is the Total Number of Damages Class Members.  If the parties are unable to agree on the Total Opt-Out Percentage, the Automobile Dealership Plaintiffs and the DENSO Defendants agree to submit their respective calculations of the Total Opt-Out Percentage to the Court for decision as to which of the competing calculations is most reasonable.  Should the Total Opt-Out Percentage be more than ten percent (10%), the DENSO Defendants shall be paid within ten (10) business days of the parties' agreement or the Court's determination of the Total Opt-Out Percentage calculation, out of the Settlement Funds, an amount equal to the Settlement Funds multiplied by the difference between ten percent (10%) and the Total Opt-Out Percentage.  As an example, for the avoidance of doubt, if the Total Opt-Out Percentage were twenty-five percent (25%), the DENSO Defendants would be paid fifteen percent (15%) of the Settlement Funds.

G.      Payment of Expenses

        39.     The DENSO Defendants agree to permit use of a maximum of USD $500,000 of the Settlement Funds toward the cost of providing notice to the Settlement Classes and the costs of administration of the Settlement Funds prior to Final Court Approval after the Settlement Amount is paid into the Escrow Account(s).  To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of USD $500,000) are not recoupable if this settlement does not become final or is

terminated.  The Escrow Agent shall return all remaining portions of the Settlement Funds to the DENSO Defendants should this Agreement not receive Final Court Approval.  The DENSO Defendants shall not be liable for any of the costs or expenses of the litigation incurred by Automobile Dealership Plaintiffs in the Actions, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or Special Master, appeals, trials, or the negotiation of other settlements, or for Settlement Class administration and costs, except to the extent that any such costs or expenses are awarded from the Settlement Funds by Court order.

H.      The Settlement Funds

40.      Releasors shall look solely to the Settlement Funds for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against the DENSO Defendants or any Releasee for any Released Claims.

41.      After this Agreement becomes final within the meaning of Paragraph 31, and at a time to be determined by Settlement Class Counsel, the Settlement Funds shall be distributed in accordance with plans to be submitted, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Funds, or the administration of the Settlement Funds, including the costs and expenses of such investment, distribution and administration.

I.      Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives

42.      Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed subject to Court approval and indemnified solely out of the Settlement Funds for their costs and expenses.  The DENSO Defendants and the other Releasees shall not be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs' or the Settlement Classes'

respective attorneys, experts, advisors, agents, or representatives. All such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Funds.

43.     (a)     Settlement Class Counsel may, after Preliminary Approval of this Agreement at a time to be determined in their sole discretion, submit an application to the Court ("Fee and Expense Application") for the following payments to be made to Settlement Class Counsel after Final Court Approval of this Agreement: (i) an award of attorneys' fees not in excess of one-third of the sum of the Settlement Amount and any interest accrued thereon while in the Escrow Account(s), plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Actions and incentive awards ("Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications from time to time for fees and expenses incurred and reasonable incentive awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Funds.

(b)     Subject to Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Funds for all expenses including attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Funds upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Funds, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event this Agreement is rescinded or terminated pursuant to Paragraphs 58–60.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Funds are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Other than to pay the Settlement Amount, as provided herein, neither the DENSO Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Actions.

(e)     Neither the DENSO Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

J.     Cooperation

44.     In return for the release and discharge provided herein, in addition to the Settlement Amount, the DENSO Defendants agree to provide, following Preliminary Approval, substantial cooperation to Automobile Dealership Plaintiffs as set forth in this paragraph and below ("Cooperation").  All such Cooperation shall occur in a manner that is in compliance with the DENSO Defendants' obligations to any Government Entity (meaning the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, the Canadian Competition Bureau, or any other government entity).  The DENSO Defendants shall not be required to provide Documents or information protected by the attorney-client

- 38 -

privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by court order, any foreign or domestic law, or by a Government Entity. Should the DENSO Defendants withhold any materials pursuant to the foregoing sentence, the DENSO Defendants will so inform the Automobile Dealership Plaintiffs and will describe the basis for such withholding to the extent permissible under applicable law.  Cooperation shall be limited to the Alleged Parts and shall not include information relating to other products manufactured by the DENSO Defendants and/or Releasees.

45.     *Transactional Data*.  At the request of Automobile Dealership Plaintiffs, following Preliminary Approval, and subject to meet and confer with the DENSO Defendants as to any reasonable limitations on this obligation, the DENSO Defendants will use their best efforts to produce on a rolling basis within two hundred seventy (270) days after such request, existing and reasonably accessible transactional data (including English translations thereof, to the extent they exist) related to any Alleged Parts to the extent Automobile Dealership Plaintiffs continue to pursue claims against one or more other Defendants with respect to the respective part at the time of production.  The DENSO Defendants will use their best efforts to begin production of the foregoing transactional data as soon as reasonably possible after such request and agree to prioritize such productions to the extent practicable.  The time period for this production will be from January 1, 1996 to December 31, 2013, but only to the extent such data currently exist and are reasonably accessible.  In addition, following Preliminary Approval and to the extent reasonably requested by Automobile Dealership Plaintiffs, the DENSO Defendants agree to make reasonable efforts to (a) provide an estimate of the DENSO Defendants' sales of the Alleged Parts incorporated into Vehicles sold in the United States, and (b) provide, in addition to the transactional data referenced above, information contained in the DENSO Defendants' global

sales planning system, concerning the Vehicle makes and models sold in the United States that contained Alleged Parts sold by the DENSO Defendants.

46. *Documents*. The DENSO Defendants have already produced tens of thousands of Documents to Automobile Dealership Plaintiffs. The DENSO Defendants will consider in good faith any reasonable further request by Automobile Dealership Plaintiffs, following Preliminary Approval, to collect, and make available for inspection and copying, additional Documents related to any Alleged Parts to the extent Automobile Dealership Plaintiffs continue to pursue claims against one or more other Defendants with respect to the respective part at the time of production, provided the request would not impose an undue burden on the DENSO Defendants. The DENSO Defendants will not be required to make available to Automobile Dealership Plaintiffs any Documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity.

47. Subject to Paragraph 45, the DENSO Defendants will have no obligation to collect, search, produce, or make available to the Automobile Dealership Plaintiffs any Documents created on or after February 23, 2010, except that the DENSO Defendants agree to produce certain Documents that relate to the DENSO Defendants' responses to Requests for Quotation and price-reduction requests made after February 23, 2010, subject to reasonable limitations to be agreed upon by the parties in subsequent meet and confer discussions.

48. Should the DENSO Defendants inadvertently disclose Documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity, Automobile Dealership Plaintiffs agree (i) that such disclosure does not

constitute a waiver of any applicable privilege or confidentiality requirement, and (ii) to return such documents to the DENSO Defendants upon a written request from the DENSO Defendants.

49. *Other Cooperation.* At the request of Automobile Dealership Plaintiffs, following Preliminary Approval, the DENSO Defendants will provide a list of current or former officers, directors, or employees who were interviewed by any Government Entity, who testified before a grand jury in connection with the DOJ's investigation, or were disclosed to any Government Entity as having knowledge of alleged antitrust violations as to the Alleged Parts, given however, that the DENSO Defendants shall not be required to disclose to Automobile Dealership Plaintiffs or Settlement Class Counsel the specific Government Entities before which each such current or former employee, director, or officer appeared or to which they were disclosed as having knowledge of alleged antitrust violations as to the Alleged Parts. The DENSO Defendants shall also make best efforts (not to include actual or threatened employee disciplinary action) to provide the following types of cooperation relating to alleged antitrust violations as to the Alleged Parts: (1) witness interviews; (2) deposition testimony in the Actions; (3) declarations or affidavits in the Actions; and/or (4) trial testimony in the Actions. While there will be no predetermined number of witnesses to be made available for interviews, depositions, declarations, affidavits, or trial testimony, Automobile Dealership Plaintiffs agree to request such cooperation only when reasonably necessary to their prosecution of the Actions. Nothing in this provision shall prevent the DENSO Defendants from objecting to the reasonableness of the identity and number of persons selected by Settlement Class Counsel and settlement class counsel in the End-Payor Actions to appear for interviews, for depositions, or as trial witnesses, or to provide declarations or affidavits in the Actions. The DENSO Defendants shall make witnesses available for such interviews or depositions in their country of residence as of the date of the interview or deposition,

unless otherwise agreed to by the parties.  If any such interview, deposition, or trial testimony takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse the DENSO Defendants for such person's economy class fare and up to $450 per day for lodging and expenses actually incurred.  It is understood that the DENSO Defendants may be unable to make available for interviews, depositions, or trial testimony or any other court proceedings the seven individuals referenced in Paragraph 11(b) of the plea agreement between DENSO Corporation and the United States of America (2:12-cr-20063-GCS-PJK, E.D. Mich., ECF No. 9), or any individual who is no longer an officer, director, or employee of any DENSO Defendant.

50.    All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Any witness interviews or depositions provided pursuant to Paragraph 49 shall be coordinated with, and occur at the same time as, witness interviews and depositions to be provided under the DENSO Defendants' cooperation obligations to the End-Payor Plaintiffs.

51.    The DENSO Defendants shall be entitled to designate all Cooperation Materials in accordance with the Protective Orders.  Automobile Dealership Plaintiffs and Settlement Class Counsel will not attribute any factual information obtained from attorney proffers to the DENSO Defendants or their counsel.  Automobile Dealership Plaintiffs and Settlement Class Counsel may share information obtained from attorney proffers with End-Payor Plaintiffs, but shall not disclose information obtained from attorney proffers to any other claimants or potential claimants who did not attend such proffers, including direct purchaser plaintiffs, truck and equipment dealer plaintiffs, state attorneys general, and opt-out plaintiffs in the MDL Proceeding, except with the express written consent of the DENSO Defendants.

52.     DENSO Defendants' counsel already has provided attorney proffers to Automobile Dealership Plaintiffs and Settlement Class Counsel under ACPERA pursuant to confidentiality agreements which shall continue in full force and effect. DENSO Defendants' counsel agree to make themselves available for reasonable follow-up questions from, and coordinated between, Settlement Class Counsel and settlement class counsel for End-Payor Plaintiffs.  Notwithstanding any other provision of this Agreement, the parties and their counsel further agree that Settlement Class Counsel shall maintain all statements made by the DENSO Defendants' counsel as "Highly Confidential," as said designation is described in the Protective Order in the Actions, and shall not use the information so received for any purpose other than the prosecution in the Actions of the claims with respect to Alleged Parts, that any statements made by DENSO's counsel in connection with and/or as part of this settlement shall not be disclosed to any other party, and that statements made by counsel for the DENSO Defendants in connection with or as part of this settlement shall be governed by Federal Rule of Evidence 408, and otherwise shall not be deemed admissible into evidence or to be subject to further discovery.  Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of claims asserted in all cases in the MDL Proceeding including for the purpose of developing an allocation plan relating to any settlement or judgment proceeds, except any claims against Releasees (but shall not introduce any such information into the record, or depose or subpoena any DENSO Defendant counsel), and may rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information, and belief, such information has evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.

53.     In the event that the DENSO Defendants produce Documents or provide declarations or written responses to discovery to any party or non-party in the actions in the MDL

Proceeding, concerning or relating to the Actions ("Relevant Production"), the DENSO Defendants shall produce all such Documents, declarations, or written discovery responses to Automobile Dealership Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations, or written discovery responses have not previously been produced by the DENSO Defendants to Automobile Dealership Plaintiffs.  This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in the MDL Proceeding.  Settlement Class Counsel may attend and/or participate in any depositions of the DENSO Defendants' witnesses in addition to the depositions set forth in Paragraph 49, and Settlement Class Counsel together with settlement class counsel for the End-Payor Plaintiffs may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the End-Payor Plaintiffs shall not expand the time permitted for the deposition as may be provided by the Court, and Settlement Class Counsel will not ask the Court to enlarge the time of any deposition noticed of a DENSO Defendant current or former employee.  Participation by Settlement Class Counsel in the depositions discussed in this Paragraph will not limit the number of depositions to be provided under Paragraph 49.  Automobile Dealership Plaintiffs and Settlement Class Counsel agree to use their best efforts to ensure that any depositions taken under Paragraph 49 above are coordinated with any other deposition noticed in the MDL Proceeding to avoid unnecessary duplication.

54.    Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, the DENSO Defendants' obligations to provide Cooperation with respect to any Alleged Part under this Agreement shall continue only until otherwise ordered by the Court, or until such time as final judgment has been entered in the relevant Action against all Defendants in that Action and the time for appeal or to seek appeal from such final judgment has expired and no motion or other

pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the entry of such final judgment or to toll the time for appeal such final judgment or, if appealed, such final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

55.     If this Agreement is rescinded, disapproved, or otherwise fails to take effect, or if final judgment has been entered by the United States District Court for the Eastern District of Michigan in all of the Actions, or the Actions have otherwise been terminated (collectively "District Court Termination"), unless otherwise agreed by the DENSO Defendants, within sixty (60) days after District Court Termination, Automobile Dealership Plaintiffs must return or destroy all Cooperation Materials received from the DENSO Defendants to the extent required by the Protective Orders, and must comply with all other terms of the Protective Orders governing such return or destruction.   Whether the Cooperation Materials are returned or destroyed, Automobile Dealership Plaintiffs must submit a written certification to the DENSO Defendants by the sixty (60) day deadline that identifies (by category, where appropriate) all Cooperation Materials that were returned or destroyed and that affirms that Automobile Dealership Plaintiffs have not retained any copies, abstracts, compilations, summaries, or other form that reproduces or captures any of the Cooperation Material.

56.     In the event that this Agreement fails to receive Final Court Approval, the parties agree that neither Automobile Dealership Plaintiffs nor Settlement Class Counsel shall be permitted to use or introduce into evidence against the DENSO Defendants and other Releasees, at any hearing or trial, or in support of any motion, opposition, or other pleading in the Actions or in

any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any Documents provided by the DENSO Defendants and/or the Releasees, their counsel, or any individual made available by the DENSO Defendants pursuant to Cooperation (as opposed to from any other source or pursuant to a court order). Notwithstanding anything contained herein, Automobile Dealership Plaintiffs and the DENSO Defendants are not relinquishing any rights to pursue discovery from each other or from third parties, in the event that this Agreement fails to receive Final Court Approval, including final approval of the Settlement Classes, as defined in Paragraph 21, or in the event that it is terminated or rescinded by either party under any provision herein. Should this Agreement fail to receive Final Court Approval or otherwise be terminated or rescinded by either party under any provision herein, Automobile Dealership Plaintiffs and the DENSO Defendants will meet-and-confer regarding the timing of any such additional discovery. If the parties cannot agree, they may submit any disputes to the Special Master or Court in the MDL Proceeding.

57. Unless and until this Agreement is rescinded, disapproved, or otherwise fails to take effect, the DENSO Defendants and other Releasees need not respond to formal discovery requests from Automobile Dealership Plaintiffs or otherwise participate in the Actions during the pendency of this Agreement, with the exception of the Cooperation provisions set forth above. Other than to enforce the terms of this Agreement, neither the DENSO Defendants nor Automobile Dealership Plaintiffs shall file motions against the other in the Actions.

K.  Rescission if Agreements Are Not Approved or Final Judgments Are Not Entered

58. If the requirements of subparts (i) and (iii) of Paragraph 31 of this Agreement fail to be met, then the DENSO Defendants and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court out

of the Settlement Funds shall not be deemed a basis to rescind this Agreement.  If (a) the requirements of subpart (ii) of Paragraph 31 of this Agreement fail to be met, or (b) the End-Payor Settlement Agreement is rescinded, terminated, or cancelled for any reason before the Court has entered the orders and final judgments required by subpart (ii) of Paragraph 31 of this Agreement, the DENSO Defendants at their sole discretion shall have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 69.

59.     In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is terminated or rescinded by either party under any provision herein, then: (i) this Agreement shall be of no force or effect, except as expressly provided in this Agreement; (ii) the Settlement Funds shall be returned forthwith to the DENSO Defendants less only disbursements made in accordance with Paragraph 39 of this Agreement; and (iii) the DENSO Defendants shall be entitled to any tax refunds owing to the Settlement Funds.  At the request of the DENSO Defendants, Settlement Class Counsel shall file claims for any tax refunds owed to the Settlement Funds and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to the DENSO Defendants.  The DENSO Defendants expressly reserve all of their rights and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated or rescinded.

60.     Further, and in any event, Automobile Dealership Plaintiffs and the DENSO Defendants agree that this Agreement, whether or not it receives Final Court Approval or is otherwise terminated or rescinded by either party under any provision herein, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or

wrongdoing whatsoever by the DENSO Defendants or any other Releasees, or (ii) the truth of any of the claims or allegations contained in the Complaints, the Proposed Consolidated Amended Complaint, or any other pleading filed in the MDL Proceeding.  Evidence derived from this Agreement, and any and all negotiations, Documents, and discussions associated with it shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, against the DENSO Defendants or other Releasees (except to enforce this Agreement).  Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 44–57, subject to the limitations in those paragraphs, for the purpose of prosecution of the claims in the MDL Proceeding, except as to any such claims against the DENSO Defendants or Releasees.

L.    <u>Miscellaneous</u>

61.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as Cooperation by the DENSO Defendants.

62.    The DENSO Defendants shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

63.    This Agreement does not settle or compromise any claim by Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaints or, if amended, any subsequent complaints, against any Defendant or alleged co-conspirator other than the Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Automobile Dealership Plaintiffs and the Settlement Classes.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or

co-conspirators or any other person other than the Releasees, for sales made by the DENSO Defendants and the DENSO Defendants' alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  The DENSO Defendants' sales to the Settlement Classes and the DENSO Defendants' alleged illegal conduct shall remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than the Releasees to the extent permitted by applicable law.

64.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Automobile Dealership Plaintiffs and the DENSO Defendants.  This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of laws principles.  The DENSO Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

65.     This Agreement constitutes the entire, complete, and integrated agreement among Automobile Dealership Plaintiffs and the DENSO Defendants pertaining to the settlement of the Actions against the DENSO Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Automobile Dealership Plaintiffs and the DENSO Defendants in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the DENSO Defendants, and approved by the Court.

66.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the DENSO Defendants.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees, other than the DENSO Defendants that are parties hereto, are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

67.     This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the DENSO Defendants, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

68.     Neither Automobile Dealership Plaintiffs nor the DENSO Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

69.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail, or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

70.     The DENSO Defendants and Automobile Dealership Plaintiffs agree not to disclose publicly or to any other person, except for Releasees where necessary, the terms of this Agreement until this Agreement is submitted to the Court for Preliminary Approval.

71.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Steven F. Cherry
David P. Donovan
Patrick J. Carome
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
patrick.carome@wilmerhale.com

*Counsel for Defendants DENSO Corporation,
DENSO International America, Inc., DENSO
International Korea Corporation, DENSO
Korea Automotive Corporation, DENSO
Automotive Deutschland GmbH, ASMO Co.,
Ltd., ASMO North America, LLC, ASMO
Greenville of North Carolina, Inc., and ASMO
Manufacturing, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International
America, Inc.*

Jonathan W. Cuneo
Joel Davidow
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com

Shawn M. Raiter
LARSON KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com

Don Barrett
David McMullan
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for Automobile*
*Dealership Plaintiffs and Settlement Class*
*Counsel*